MORGAN, LEWIS & BOCKIUS LLP
BRIAN M. JAZAERI, Bar No. 221144
brian.jazaeri@morganlewis.com
MEGAN A. SUEHIRO, Bar No. 316104
megan.suehiro@morganlewis.com
300 South Grand Avenue
Twenty-Second Floor
Los Angeles, CA 90071-3132
Tel:   +1.213.612.2500
Fax:   +1.213.612.2501

Attorneys for Defendant
U.S. BANK NATIONAL ASSOCIATION

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| SHAUNA ANDRE, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>U.S. BANK, N.A.,<br><br>Defendant. | Case No. 2:20-cv-04854-CBM-PJW<br><br>**DEFENDANT U.S. BANK NATIONAL ASSOCIATION'S:**<br><br>**(1) NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION; AND**<br><br>**(2) MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>*[Filed concurrently with Supporting Declaration and [Proposed] Order]*<br><br>Date:        February 9, 2021<br>Time:       10:00 a.m.<br>Judge:      Hon. Consuelo B. Marshall<br>Ctrm:       8B<br><br>Complaint Filed: June 1, 2020<br>FAC Filed: September 29, 2020<br>Trial Date: None set |

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

**NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on February 9, 2021, at 10:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 8B of the above-entitled Court, located at the First Street Courthouse, 350 W. 1st Street, Los Angeles, California 90012, Defendant U.S. Bank National Association ("U.S. Bank"), by and through its attorneys of record, will and hereby does move for an order compelling arbitration and dismissing this action.[1]

This Motion is made pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1-16, and upon the grounds that Plaintiff agreed to arbitrate her claims when she consented to the arbitration agreement in U.S. Bank's Your Deposit Account Agreement at the time of opening her U.S. Bank checking account at issue in this case. This Motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Susan Remington, the pleadings and records on file in this action, and such other evidence, briefing, and argument as may be presented to the Court at or before the hearing on the Motion.

This Motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on December 11, 2020.

Dated:  December 21, 2020          MORGAN, LEWIS & BOCKIUS LLP

By  /s/ *Brian M. Jazaeri*
Brian M. Jazaeri
Megan A. Suehiro
Attorneys for Defendant
U.S. BANK NATIONAL ASSOCIATION

---

[1] This Motion satisfies U.S. Bank's obligation to respond to the First Amended Complaint, ECF No. 9, at this stage. *See* Order Re Joint Stipulation Regarding Briefing on Arbitration Issues, ECF No. 16. U.S. Bank reserves the right to file a Rule 12(b) motion at a later time. *See id.*

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................................. 1

II. FACTUAL BACKGROUND .............................................................. 1

  A.  Plaintiff Entered Into an Arbitration Agreement With U.S. Bank ....... 1

  B.  Despite Her Agreement to Arbitrate, Plaintiff Filed This Action ........ 3

III. LEGAL STANDARD .......................................................................... 4

IV. PLAINTIFF MUST ARBITRATE HER CLAIMS .............................. 5

  A.  The FAA Governs the Arbitration Agreement ..................................... 5

  B.  A Valid and Binding Arbitration Agreement Exists............................. 6

  C.  The Arbitration Agreement Encompasses All of Plaintiff's Claims ................................................................................................... 7

  D.  *McGill* Does Not Preclude Arbitration of Plaintiff's Claims .............. 9

    1.  Plaintiff Does Not Seek Public Injunctive Relief....................... 9

    2.  Plaintiff Cannot Invoke the *McGill* Rule Because She Lacks Article III Standing to Seek a Public Injunction............ 13

V.  THIS ACTION SHOULD BE DISMISSED OR, IN THE ALTERNATIVE, STAYED PENDING COMPLETION OF ARBITRATION ............................................................................... 16

VI. CONCLUSION ................................................................................. 16

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

i

DEFENDANT U.S. BANK'S
MOTION TO COMPEL ARBITRATION

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*2151 Michelson, L.P. v. Corp. of the Presiding Bishop of the Church of
Jesus Christ of Latter-Day Saints*
754 F. App'x 596 (9th Cir. 2019) ........................................................................ 16

*Ackerberg v. Citicorp USA, Inc.*
898 F. Supp. 2d 1172 (N.D. Cal. 2012) ................................................................. 6

*Allied-Bruce Terminix Cos. v. Dobson*
513 U.S. 265 (1995) ............................................................................................... 5

*Am. Express Co. v. Italian Colors Rest.*
570 U.S. 228 (2013) ............................................................................................... 4

*AT&T Mobility LLC v. Concepcion*
563 U.S. 333 (2011) ............................................................................................... 4

*Austin-Smith v. Calatlantic Group, Inc.*
2019 WL 8754733 (C.D. Cal. Apr. 30, 2019) .................................................... 12

*Bell-Sparrow v. SFG*Proschoicebeauty*
2019 WL 1201835 (N.D. Cal. Mar. 14, 2019) ................................................... 13

*Cayanan v. Citi Holdings, Inc.*
928 F. Supp. 2d 1182 (2013) ................................................................................. 6

*Chapman v. Pier 1 Imps. (U.S.) Inc.*
631 F.3d 939 (9th Cir. 2011) .............................................................................. 13

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*
207 F.3d 1126 (9th Cir. 2000) .......................................................................... 4, 9

*Circle Click Media LLC v. Regus Mgmt. Group LLC*
2015 WL 3879028 (N.D. Cal. July 18, 2016) .................................................... 15

*Citizens Bank v. Alafabco, Inc.*
539 U.S. 52 (2003) ................................................................................................. 5

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DEFENDANT U.S. BANK'S
MOTION TO COMPEL ARBITRATION

# TABLE OF AUTHORITIES
(continued)

**Page**

*Colette v. CV Scis., Inc.*
2020 WL 2739861 (C.D. Cal. May 22, 2020)......................................................15

*Cortina v. Citigroup Global Mkts., Inc.*
2011 WL 3654496 (S.D. Cal. Aug. 19, 2011)........................................................5

*Croucier v. Credit One Bank, N.A.*
2018 WL 2836889 (S.D. Cal. June 11, 2018) .....................................................13

*Davidson v. Kimberly-Clark Corp.*
889 F.3d 956 (9th Cir. 2018) .......................................................................14, 15

*Delgado v. Progress Fin. Co.*
2014 WL 1756282 (E.D. Cal. May 1, 2014).........................................................7

*Epic Sys. Corp. v. Lewis*
138 S. Ct. 1612 (2018) ...................................................................................4

*Fernandez v. Atkins Nutritionals, Inc.*
2018 WL 280028 (S.D. Cal. Jan. 3, 2018) .........................................................15

*Harris v. Bd. of Supervisors, Los Angeles County*
366 F.3d 754 (9th Cir. 2004) .........................................................................14

*In re TFT-LCD (Flat Panel) Antitrust Litig.*
2011 WL 2650689 (N.D. Cal. July 6, 2011) .......................................................7

*Johnson v. JP Morgan Chase Bank, N.A.*
2018 WL 4726042 (C.D. Cal. Sept. 18, 2018)........................................10, 11, 12

*Kilgore v. KeyBank, Nat'l Ass'n*
718 F.3d 1052 (9th Cir. 2013) ........................................................................6

*Koyoc v. Progress Fin. Co.*
2014 WL 1878903 (C.D. Cal. May 9, 2014).........................................................7

*Kramer v. Enter. Holdings, Inc.*
829 F. App'x 259 (9th Cir. 2020) ...................................................................12

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

iii

DEFENDANT U.S. BANK'S
MOTION TO COMPEL ARBITRATION

1

## TABLE OF AUTHORITIES
(continued)

2

**Page**

3

4

*Mortensen v. Bresnan Commc'ns, LLC*
   722 F.3d 1151 (9th Cir. 2013) ..................................................... 4

5

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*
6    460 U.S. 1 (1983) ........................................................................ 8

7

*Shanks v. Jarrow Formulas, Inc.*
8    2019 WL 7905745 (C.D. Cal. Dec. 27, 2019) ......................... 13

9

*Sho-Oja v. Sprint Corp.*
10    2014 WL 12561584 (C.D. Cal. Jan. 16, 2014) ........................... 7

11

*Sponheim v. Citibank, N.A.*
12    2019 WL 2498938 (C.D. Cal. June 10, 2019) ......................... 13

13    *Stover v. Experian Holdings, Inc.*
       978 F.3d 1082 (9th Cir. 2020) ............................................ 13, 15
14

15    *U.S. Bank Nat'l Ass'n v. Wayman*
       2015 WL 5772730 (S.D. Cal. Sept. 30, 2015) ......................... 6
16

*United States v. Sutcliffe*
17    505 F.3d 944 (9th Cir. 2007) ..................................................... 5

18
*United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*
19    363 U.S. 574 (1960) .................................................................... 8

20
*Wright v. Sirius XM Radio Inc.*
21    2017 WL 4676580 (C.D. Cal. June 1, 2017) ....................... 2, 9, 12

22    **CALIFORNIA CASES**

23
*Binder v. Aetna Life Ins. Co.*
24    75 Cal. App. 4th 832 (1999) ....................................................... 6

25    *Douglas E. Barnhart, Inc. v. CMC Fabricators, Inc.*
       211 Cal. App. 4th 230 (2012) ..................................................... 6
26

27    *McGill v. Citibank, N.A.*
       2 Cal. 5th 945 (2017) ..................................................... passim
28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

iv

DEFENDANT U.S. BANK'S
MOTION TO COMPEL ARBITRATION

1

# TABLE OF AUTHORITIES
(continued)

2

**Page**

3

4

*Windsor Mills, Inc. v. Collins & Aikman Corp.*
    25 Cal. App. 3d 987 (1972) ................................................................ 6

5

**FEDERAL STATUTES**

6

7

9 U.S.C. § 1 ................................................................................................. 5

8

9 U.S.C. § 2 ........................................................................................ 4, 5, 6

9

9 U.S.C. § 3 ............................................................................................. 16

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DEFENDANT U.S. BANK'S
MOTION TO COMPEL ARBITRATION

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Plaintiff brings this lawsuit contesting certain overdraft fees charged on her checking account with U.S. Bank National Association ("U.S. Bank").  Setting aside the lack of merit with regard to all of Plaintiff's claims, Plaintiff cannot pursue this action in court because she entered into a valid and binding agreement to arbitrate all disputes relating to or arising out of her U.S. Bank checking account.  The Federal Arbitration Act ("FAA") requires that Plaintiff honor her agreement to arbitrate according to the terms stated therein.  This dispute falls squarely within the scope of the arbitration agreement and Plaintiff cannot demonstrate any reason for the Court to deviate from the FAA's liberal policy favoring arbitration.

U.S. Bank respectfully requests that the Court order Plaintiff to individually arbitrate all of her claims against U.S. Bank and dismiss this action.

### II.    FACTUAL BACKGROUND

#### A.    Plaintiff Entered Into an Arbitration Agreement With U.S. Bank.

Plaintiff alleges that prior to January 2020, she opened a personal U.S. Bank checking account and signed up for and used U.S. Bank's online/mobile banking shortly thereafter.  First Amended Complaint, ECF No. 9 ("FAC") ¶¶ 33-34.  In opening her checking account, Plaintiff agreed to be bound by U.S. Bank's Your Deposit Account Agreement ("Account Agreement"), which provides the general rules applicable to all U.S. Bank deposit accounts.  *See* Declaration of Susan Remington ("Remington Decl."), Ex. A at 2 ("By providing a written or electronic signature on a signature card or other agreement or contract, opening, or continuing to hold an account with us, you agree to the most recent version of this Agreement[.]"); *see also id.* ("This booklet provides the general rules that apply to

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

1

DEFENDANT U.S. BANK'S
MOTION TO COMPEL ARBITRATION

the account(s) you have with U.S. Bank.").[1]  Plaintiff signed a Signature Card acknowledging receipt of the Account Agreement and giving her "express consent to the terms and conditions in [the] account agreement[.]" *Id.*, Ex. B.

The Account Agreement contains an arbitration provision ("Arbitration Agreement") that is prominently displayed in bold type and informs customers: "**In the event of a dispute relating to or arising out of your account or this Agreement, you or we may elect to arbitrate the dispute.**" *Id.*, Ex. A at 16 (emphasis in original).  The Arbitration Agreement also informs customers that "**[a]rbitration can only decide our or your dispute and cannot consolidate or join claims of other persons who may have similar claims.  There will be no authority or right for any disputes to be arbitrated on a class action basis**." *Id.* (emphasis in original).

A separate paragraph of the Arbitration Agreement, titled "Effects of Arbitration" provides:

> **If either of us chooses arbitration, neither of us will have the right to litigate the dispute in court or have a jury trial.  In addition, you will not have the right to participate as a representative or member of any class of claimants, or in any other form of representative capacity that seeks monetary or other relief beyond your individual circumstances, pertaining to any dispute subject to arbitration. There shall be no authority for any claims to be arbitrated on a class action or any other form of representative basis.  Arbitration can only decide your or our claim, and you may not consolidate or join the claims of other persons who may have similar claims, including without limitation claims for public injunctive or other equitable relief as to our other customers or members of the general public. Any such monetary, injunctive, or other equitable relief shall be limited solely to your accounts, agreements, and transaction with us.**

*Id.* at 16-17 (emphasis in original).

---

[1] "A court may consider evidence beyond the complaint in ruling on a motion to compel." *Wright v. Sirius XM Radio Inc.*, 2017 WL 4676580, at *4 (C.D. Cal. June 1, 2017) (citation omitted).

While the Arbitration Agreement provides that the arbitrator will decide whether a claim falls within the scope of the Arbitration Agreement, "any question as to the validity and effect of [the] class action waiver" is reserved for the Court. *Id.*

## B. Despite Her Agreement to Arbitrate, Plaintiff Filed This Action.

Plaintiff brings this putative class action against U.S. Bank relating to and arising out of her checking account and Account Agreement with U.S. Bank. Specifically, Plaintiff's claims are based on her checking account "available balance" and overdraft fees charged to her account pursuant to the Account Agreement. FAC ¶¶ 1, 6. Plaintiff alleges that on several occasions, U.S. Bank improperly charged her a $36.00 overdraft fee when U.S. Bank's online/mobile banking application reflected that she had funds "supposedly available" in her checking account. *Id.* ¶¶ 36-42.

Plaintiff separately alleges that "[i]n one instance," she discovered that her checking account reflected $210.01 in available funds when it should have displayed that only $0.01 was available. *Id.* ¶¶ 43-48. Plaintiff alleges that her account "again reflected the accurate balance of $0.01" the following day. *Id.* ¶ 49. Plaintiff does not allege that she was charged an overdraft fee on this occasion. Instead, Plaintiff alleges that "*[i]f* Plaintiff had taken Defendant's representations at face value and made a purchase over $0.01, she would have incurred another overdraft fee." *Id.* ¶ 50 (emphasis added).

Plaintiff alleges, "upon information and belief," that U.S. Bank "is purposefully showing customers like Plaintiff false balances to encourage them to spend money that the customer does not actually have." *Id.* ¶ 51. According to Plaintiff, once those customers withdraw funds, "they get hit with overdraft fees." *Id.*

Based on these allegations, Plaintiff asserts four causes of action against U.S. Bank: (i) Violation of California's Unfair Competition Law ("UCL"); (ii) Violation of the California Consumers Legal Remedies Act ("CLRA"); (iii) Unjust Enrichment; and (iv) Violation of the Rosenthal Fair Debt Collection Practices Act

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

3

DEFENDANT U.S. BANK'S
MOTION TO COMPEL ARBITRATION

1  ("Rosenthal Act"). *See id.* ¶¶ 71-116. Plaintiff seeks, among other things, "equitable
2  and injunctive relief, restitution of all amounts illegally obtained, and disgorgement
3  of any and all ill-gotten gains." *Id.* ¶ 57; *see also id.*, Prayer for Relief. All of
4  Plaintiff's claims "relat[e] to" and "aris[e] out of" her account and the Account
5  Agreement, and therefore must be arbitrated. Remington Decl., Ex. A at 16.

6  ## III.   LEGAL STANDARD

7       The FAA provides that contractual arbitration agreements "shall be valid,
8  irrevocable, and enforceable, save upon such grounds as exist at law or in equity for
9  the revocation of any contract." 9 U.S.C. § 2. A court ***must*** compel arbitration if the
10  transaction involves interstate commerce and (1) a valid agreement to arbitrate exists;
11  and (2) the agreement encompasses the dispute at issue. *See Chiron Corp. v. Ortho*
12  *Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).

13       The FAA reflects a liberal federal policy favoring arbitration. *AT&T Mobility*
14  *LLC v. Concepcion*, 563 U.S. 333, 339 (2011). Thus, "courts must 'rigorously
15  enforce' arbitration agreements according to their terms, including terms that 'specify
16  with whom [the parties] choose to arbitrate their disputes,' and 'the rules under which
17  that arbitration will be conducted.'" *Am. Express Co. v. Italian Colors Rest.*, 570
18  U.S. 228, 233 (2013) (emphasis and internal citations omitted); *see Epic Sys. Corp.*
19  *v. Lewis*, 138 S. Ct. 1612, 1621 (2018) ("Not only did Congress require courts to
20  respect and enforce agreements to arbitrate; it also specifically directed them to
21  respect and enforce the parties' chosen arbitration procedures."). "As arbitration is
22  favored, those parties challenging the enforceability of an arbitration agreement bear
23  the burden of proving that the provision is unenforceable." *Mortensen v. Bresnan*
24  *Commc'ns, LLC*, 722 F.3d 1151, 1157 (9th Cir. 2013) (citing *Green Tree Fin. Corp.-*
25  *Ala. v. Randolph*, 531 U.S. 79, 91 (2000)).

26
27
28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

4

DEFENDANT U.S. BANK'S
MOTION TO COMPEL ARBITRATION

## IV.    PLAINTIFF MUST ARBITRATE HER CLAIMS

### A.    The FAA Governs the Arbitration Agreement.

The FAA applies to contracts evidencing a transaction involving interstate commerce.  *See* 9 U.S.C. §§ 1, 2.  The Act's reach is expansive and "embodies Congress' intent to provide for the enforcement of arbitration agreements within the full reach of the Commerce Clause." *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 274 (1995) (quotation omitted).  As the Supreme Court has explained, the transaction at issue need not have "any specific effect upon interstate commerce" to meet this threshold requirement. *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56-57 (2003).  Instead, it is sufficient that the economic activity in question represent a general practice "bear[ing] on interstate commerce in a substantial way." *Id.* (citations omitted).

Relevant here, courts routinely recognize the "important interstate attributes" involved in banking and related financial activities.  *See id.* at 57-58 (finding arbitration provision in debt-restructuring agreement subject to the FAA due to the broad impact of commercial lending on the national economy); *see also Cortina v. Citigroup Global Mkts., Inc.*, 2011 WL 3654496, at *1 (S.D. Cal. Aug. 19, 2011) ("There is no question that the financial industry bears on interstate commerce in a substantial way.").  Also relevant here, the Ninth Circuit has recognized that "[a]s both the means to engage in commerce and the method by which transactions occur, the Internet is an instrumentality and channel of interstate commerce." *United States v. Sutcliffe*, 505 F.3d 944, 953 (9th Cir. 2007) (quotation omitted).

There can be no dispute that Plaintiff's use of banking services from a federally chartered and regulated national bank, including its Internet-based services, constitutes "commerce" within the meaning of the FAA.  Plaintiff admits to opening a bank account with U.S. Bank.  FAC ¶ 33.  The Arbitration Agreement is contained in the Account Agreement to which Plaintiff agreed upon opening that account. Remington Decl., Ex. A at 16; *see id.*, Ex. B.  Plaintiff additionally admits that she

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

5

DEFENDANT U.S. BANK'S
MOTION TO COMPEL ARBITRATION

used U.S. Bank's services, and "regularly monitored her account through an application on her smartphone and online on her computer." FAC ¶¶ 34, 35. The FAA has been found to apply on similar facts. *See, e.g.*, *Kilgore v. KeyBank, Nat'l Ass'n*, 718 F.3d 1052, 1057-58 (9th Cir. 2013) (applying the FAA to arbitration clause in agreement between bank and consumer); *Cayanan v. Citi Holdings, Inc.*, 928 F. Supp. 2d 1182, 1192 (2013) (applying the FAA to arbitration clauses in promissory note between bank and consumers); *Ackerberg v. Citicorp USA, Inc.*, 898 F. Supp. 2d 1172, 1174-75 (N.D. Cal. 2012) (applying the FAA to arbitration clause in credit agreement between bank and consumer). The FAA and its liberal policy favoring arbitration likewise apply here.

### B.    A Valid and Binding Arbitration Agreement Exists.

The validity of an agreement to arbitrate is assessed under state law. *See* 9 U.S.C. § 2. Under California law, contract formation requires the parties' mutual assent. *Douglas E. Barnhart, Inc. v. CMC Fabricators, Inc.*, 211 Cal. App. 4th 230, 242-43 (2012). Such assent may be manifested by written or spoken words, or through conduct. *Binder v. Aetna Life Ins. Co.*, 75 Cal. App. 4th 832, 850 (1999) (citation omitted); *see also Windsor Mills, Inc. v. Collins & Aikman Corp.*, 25 Cal. App. 3d 987, 992 (1972) ("[A]n offeree, knowing that an offer has been made to him but not knowing all of its terms, may be held to have accepted, by his conduct, whatever terms the offer contains.") (citations omitted).

Here, Plaintiff's assent to the Account Agreement, including the Arbitration Agreement contained therein, is manifested by her Signature Card and through her opening and use of a U.S. Bank checking account. In signing the Signature Card, Plaintiff expressly acknowledged her receipt of the Account Agreement and gave her "***express consent to the terms and conditions***" therein. Remington Decl., Ex. B (emphasis added). She also agreed that "[a]ll transactions shall be governed by applicable laws and the bank's terms." *Id.*; *see also U.S. Bank Nat'l Ass'n v. Wayman*, 2015 WL 5772730, at *6 (S.D. Cal. Sept. 30, 2015) ("By signing a

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

6

DEFENDANT U.S. BANK'S
MOTION TO COMPEL ARBITRATION

signature card, a depositor may agree to be bound by the rules and regulations of the bank.") (citation omitted).  Moreover, the Account Agreement specifically provides that "opening[] or continuing to hold" a U.S. Bank account—as Plaintiff did here—constitutes agreement.  Remington Decl., Ex. A at 2.  Plaintiff did not revoke or rescind the Account Agreement and does not allege any contract defenses that would render the agreement unenforceable.

### C.    The Arbitration Agreement Encompasses All of Plaintiff's Claims.

There can also be no dispute that Plaintiff's claims in this lawsuit are covered by the Arbitration Agreement.  The scope of the Arbitration Agreement is broad: it covers all disputes "relating to or arising out of [Plaintiff's] account or this Agreement." *Id.* at 16.  "Under the FAA, arbitration agreements . . . that apply to all disputes that arise out of and in connection with or relating to an agreement or the services provided therein are interpreted broadly to encompass all manner of disputes between the parties." *Sho-Oja v. Sprint Corp.*, 2014 WL 12561584, at *3 (C.D. Cal. Jan. 16, 2014) (citations omitted); *see also Delgado v. Progress Fin. Co.*, 2014 WL 1756282, at *5 (E.D. Cal. May 1, 2014) ("The use of the 'relat[ing] to' language is a signal that the scope of the agreement is broad under Ninth Circuit case law and encompasses claims beyond the four corners of the contract."); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2011 WL 2650689, at *5 (N.D. Cal. July 6, 2011) ("[T]he language 'related to' must be read broadly" to encompass "matters that, while not arising directly under the contractual relationship, are nevertheless related to it."). For Plaintiff's claims to be covered by the Account Agreement, her claims "need only 'touch matters' covered by the contract containing the arbitration provision." *Koyoc v. Progress Fin. Co.*, 2014 WL 1878903, at *4 (C.D. Cal. May 9, 2014) (citation omitted).

Here, Plaintiff's claims do more than merely "touch matters" covered by the Account Agreement.  Plaintiff alleges that she was improperly charged overdraft fees on her U.S. Bank checking account governed by the Account Agreement.  *See* FAC

¶¶ 33-50.   The Account Agreement outlines the "terms applicable to all deposit accounts," including, but not limited to, the following terms particularly relevant to Plaintiff's claims:

- "You do not have the right to withdraw funds that exceed the Available Balance on your account." *See* Remington Decl., Ex. A at 6.

- "The Available Balance does *not* reflect every transaction you have initiated or previously authorized." *Id.* (emphasis in original).

- "The funds you deposit to your account are subject to normal collection processes even after we make the funds available to you for withdrawal." *Id.* at 4.

- "We charge an Overdraft Returned Fee for each withdrawal . . . we return because it exceeds your Available Balance on a given day." *Id.* at 6.

- "We charge an Overdraft Paid Fee for each item or transaction we pay that causes the Available Balance to become negative or occurs while the Available Balance is negative on the checking account." *Id.*

- "All account owner(s) are responsible to repay to us any overdraft amount **and** any overdraft fees charged to an account, no matter which owner caused it or why." *See id.* at 4 (emphasis in original).

- "[I]t is your responsibility to ensure your account has a sufficient Available Balance to cover all transactions you conduct.   We recommend keeping a record of your balance and deducting every transaction at the time you initiate it." *Id.* at 20.

There can be no reasonable doubt that Plaintiff's claims therefore "relat[e] to or aris[e] out of" her U.S. Bank checking account and the Account Agreement governing it.  *See id.* at 16.  And, even if such doubt could somehow be found to exist, any such doubt must be resolved in favor of arbitration.  *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983); *see also United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960) ("An order to arbitrate the particular grievance should not be denied unless it may be

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

8

DEFENDANT U.S. BANK'S
MOTION TO COMPEL ARBITRATION

said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.").

Because a valid arbitration agreement exists and the agreement encompasses the dispute at issue, arbitration must be compelled. *See Chiron Corp.*, 207 F.3d at 1130.

### D. *McGill* Does Not Preclude Arbitration of Plaintiff's Claims.

U.S. Bank anticipates that Plaintiff will contend that her Arbitration Agreement is invalid under *McGill v. Citibank, N.A.*, 2 Cal. 5th 945 (2017), because it prohibits the arbitrator from adjudicating claims for public injunctive relief and prohibits Plaintiff from litigating this dispute in court if a party elects arbitration. In *McGill*, the California Supreme Court held that a provision that precludes a party from seeking public injunctive relief in any forum is invalid and unenforceable under California law (the "*McGill* Rule"). 2 Cal. 5th at 961. But the *McGill* Rule is inapplicable here because Plaintiff is not seeking public injunctive relief, and Plaintiff lacks Article III standing to seek public injunctive relief, as required to invoke the *McGill* Rule, in any event.

### 1. Plaintiff Does Not Seek Public Injunctive Relief.

While Plaintiff may try to argue that that she seeks public injunctive relief for purposes of using the *McGill* Rule to evade arbitration, the FAC does not request, let alone even mention, "public injunctive relief." *See generally* FAC. Plaintiff's allegations additionally make clear that public injunctive relief is not at issue here.

*McGill* specifically defines claims for public injunctive relief as having the primary purpose and effect of preventing harm to the general public and *specifically excludes* relief that has the primary purpose of preventing injury to a group of similarly situated individuals. 2 Cal. 5th at 955 ("Relief that has the primary purpose or effect of redressing or preventing injury to an individual plaintiff—or to a group of individuals similarly situated to the plaintiff—does not constitute public injunctive relief."); *see also Wright*, 2017 WL 4676580, at *9 (noting that to constitute public

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

9

DEFENDANT U.S. BANK'S
MOTION TO COMPEL ARBITRATION

injunctive relief, the requested relief must "by and large" benefit the general public); *Johnson v. JP Morgan Chase Bank, N.A.*, 2018 WL 4726042, at *7 (C.D. Cal. Sept. 18, 2018) (stating that an action does not seek "public injunctive relief" if "the individuals who stand to benefit are . . . an inherently circumscribed group"). "Merely requesting relief which would generally enjoin a defendant from wrongdoing does not elevate requests for injunctive relief to requests for <u>public</u> injunctive relief." *Johnson*, 2018 WL 4726042, at *6 (emphasis in original, citation omitted).

*Johnson* is particularly instructive.  In *Johnson*, customers of JPMorgan Chase Bank sought redress for the bank's alleged improper assessment of overdraft fees on transactions that did not actually overdraw their checking account available balances, among other things.  *Id.* at *1.  After JPMorgan sought to compel arbitration, the plaintiffs asserted that *McGill* applied because they sought public injunctive relief and the arbitration provision at issue waived that remedy.  *Id.* at *6.  The court disagreed, reasoning that while the plaintiffs crafted their allegations to request a general injunction and injunctive relief, the relief sought was "actually intended to redress and prevent further injury to a group of plaintiffs who have already been injured by JPMorgan's allegedly unlawful practices regarding overdraft and insufficient funds fees."  *Id.* at *7.  The court also found notable that the classes plaintiffs sought to represent were comprised of JPMorgan customers who had allegedly incurred the unlawful fees.  *Id.*  Thus, any benefit bestowed on the public by the requested injunctive relief would be "incidental to Plaintiffs' primary purpose of seeking redress for their own injuries."  *Id.*

Similarly here, the relief Plaintiff seeks is on behalf of a group of specific U.S. Bank customers.  In fact, Plaintiff states that she "brings this Class Action Complaint to challenge the deceptive business practices of [U.S. Bank] with regard to [its] overdraft fees ***charged to its customers*** for manipulating them into overdrafting their accounts."  FAC ¶ 1 (emphasis added).  Plaintiff alleges that U.S. Bank's online

banking displays falsely represent to *its customers* the amount of funds available in their respective U.S. Bank accounts. *See, e.g.*, *id.* ¶ 55 ("U.S. Bank's mobile app represents *to customers* that they have funds they do not actually have available to spend.") (emphasis added). It goes without saying that to the extent U.S. Bank charges any overdraft fees or displays account information at all, it does so only as to accounts held by its customers, not the public at large.[2] Plaintiff seeks monetary relief for herself and the proposed Class, including "restitution of all amounts illegally obtained, and disgorgement of any and all ill-gotten gains." *Id.* ¶ 57. Even Plaintiff's requests for "injunctive relief" pertain to relief for herself and the proposed Class, not the public at large. *See, e.g.*, *id.* ¶ 22 (stating that U.S. Bank's conduct "*caused Plaintiff, and others similarly situated*, damages, and requires restitution and injunctive relief to remedy and prevent future harm") (emphasis added); *see also id.* ¶ 69 (requesting issuance of a "class-wide injunction").

Plaintiff's proposed "Class" and "Sub-Class" definitions confirm the circumscribed nature of this action. Plaintiff defines the proposed "Class" as "All persons within California *with a U.S. Bank checking account(s)* who were charged and paid Defendant an overdraft fee(s) at the time his/her checking account showed available funds within the last 4 years from the date of the complaint." *Id.* ¶ 60 (emphasis added). Similarly, the proposed "Sub-Class" is defined as "All persons in the State of California *with a U.S. Bank checking account(s)* who were charged an overdraft fee(s) at the time his/her checking account showed available funds within one year from the date of the complaint." *Id.* (emphasis added). As in *Johnson*, the class definitions, factual allegations, and relief sought all demonstrate that Plaintiff does not seek public injunctive relief.

---

[2] For this reason, Plaintiff's allegation that U.S. Bank "represent[s] to the consuming public that they have available funds simply to secure overdraft fees," FAC ¶ 79, is necessarily limited to U.S. Bank customers, not the general public.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

11

DEFENDANT U.S. BANK'S
MOTION TO COMPEL ARBITRATION

Finally, while Plaintiff purports to predicate a UCL claim on "deceptive, untrue or misleading advertisement," in which she claims that the "public" was deceived by "Defendant's advertising" (*id.* ¶ 86), her allegations make clear that this claim is a mere reformulation of her complaint about U.S. Bank's disclosure of account information to its customers, not the public at large.  *See id.* ¶ 87 (alleging as part of the "advertisement" prong of her UCL claim that "[h]ad Plaintiff and the putative class members been informed that Defendant's ***representation of their account balance information*** with Defendant was false, Plaintiff and the putative Class members would not have overdrafted their accounts") (emphasis added).  It is again the account information that is at the heart of Plaintiff's claim, and such information is presented exclusively to U.S. Bank customers, not the general public. Tellingly, Plaintiff's alleged "harm" was the purported payment of overdraft fees, *i.e.*, fees paid *by U.S. Bank customers* to the extent paid at all.  *Id.* ¶ 87.  In fact, Plaintiff does not request an injunction (public or private) in connection with her purported "advertisement" claim.  *See id.* ¶¶ 85-92; *see also id.*, Prayer for Relief. Instead, further highlighting the private nature of this claim, Plaintiff seeks damages in the form of "restor[ation of] monies" to Plaintiff and other U.S. Bank customers. *See id.* ¶ 91.

As the Ninth Circuit recently confirmed, where public injunctive relief is not in issue, the *McGill* Rule does not apply.  *See Kramer v. Enter. Holdings, Inc.*, 829 F. App'x 259, 260 (9th Cir. 2020) (finding that the plaintiff's "claims must proceed in arbitration" because his "complaint does not seek public injunctive relief within the meaning of *McGill*"); *see also Johnson*, 2018 WL 4726042, at *8 ("Because the Court finds that Plaintiffs do not seek public injunctive relief, *McGill* does not apply and cannot be the basis for Plaintiffs to evade arbitration."); *Austin-Smith v. Calatlantic Group, Inc.*, 2019 WL 8754733, at *5 (C.D. Cal. Apr. 30, 2019) (finding plaintiffs' reliance on *McGill* "misplaced" because the plaintiffs were not seeking public injunctive relief); *Wright*, 2017 WL 4676580, at *9 (rejecting the plaintiff's

*McGill* challenge because the complaint did not seek public injunctive relief); *Sponheim v. Citibank, N.A.*, 2019 WL 2498938, at *5 (C.D. Cal. June 10, 2019) (same); *Bell-Sparrow v. SFG\*Proschoicebeauty*, 2019 WL 1201835, at *5 n.9 (N.D. Cal. Mar. 14, 2019) (same); *Croucier v. Credit One Bank, N.A.*, 2018 WL 2836889, at *5 (S.D. Cal. June 11, 2018) (same).  Because public injunctive relief is not sought here, *McGill* is likewise inapplicable.

### 2. Plaintiff Cannot Invoke the *McGill* Rule Because She Lacks Article III Standing to Seek a Public Injunction.

Any attempt by Plaintiff to rely on the *McGill* Rule would fail for the independent reason that she lacks Article III standing to seek public injunctive relief. The Ninth Circuit recently held that before a plaintiff may rely on the *McGill* Rule to evade arbitration, a plaintiff "must also allege that she has Article III standing" to seek public injunctive relief in federal court. *Stover v. Experian Holdings, Inc.*, 978 F.3d 1082, 1087 (9th Cir. 2020).  Absent such standing, the *McGill* Rule does not preclude arbitration. *See id.* (rejecting application of the *McGill* Rule where the plaintiff's complaint did not allege the threat of future harm required for Article III standing in a case seeking public injunctive relief).

"To have standing to obtain injunctive relief, a plaintiff must allege that a 'real or immediate threat' exists that [s]he will be wronged again." *Shanks v. Jarrow Formulas, Inc.*, 2019 WL 7905745, at *5 (C.D. Cal. Dec. 27, 2019) (quotation omitted); *see also Chapman v. Pier 1 Imps. (U.S.) Inc.*, 631 F.3d 939, 946 (9th Cir. 2011) ("[T]o establish standing to pursue injunctive relief . . . [a plaintiff] must demonstrate a 'real and immediate threat of repeated injury' in the future.") (quoting *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974)).  Where a plaintiff is knowledgeable about a challenged practice or statement, the circumstances in which that plaintiff can establish a "real or immediate threat" of future injury necessary to seek an injunction are limited and narrowly circumscribed.  In that situation, "the threat of future harm may be the consumer's plausible allegations that she will be unable to

rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to" or "the consumer's plausible allegations that she might purchase the product in the future, despite the fact it was once marred by false advertising or labeling, as she may reasonably, but incorrectly, assume the product was improved." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 969-70 (9th Cir. 2018) (citations omitted).  In either scenario, the plaintiff must demonstrate that she may suffer an "actual and imminent, not conjectural or hypothetical" threat of future harm.  *Id.* at 969.

Here, Plaintiff cannot meet this threshold standing inquiry because she has not pled any facts demonstrating an "actual and imminent" threat of future harm.  As discussed above, all of Plaintiff's claims are based on her checking account "available balance" and the alleged improper withdrawal of overdraft fees on her U.S. Bank checking account.  *See* Section II.B, *supra*.  Standing, however, cannot be premised on *past* wrongs.  *Davidson*, 889 F.3d at 967 ("[p]ast wrongs [are] insufficient by themselves to grant standing" for an injunction).  Plaintiff's request for "injunctive relief to remedy and prevent further harm" (FAC ¶ 22) is likewise insufficient to confer standing because any injunctive relief with respect to the charging of overdraft fees or the displaying of account information is necessarily limited to U.S. Bank deposit account holders, and Plaintiff no longer has a U.S. Bank deposit account.[3]  *See* Remington Decl., ¶¶ 6, 7 (stating that Plaintiff's checking account was closed in the ordinary course as of July 28, 2020, due to being overdrawn for approximately two months, and that Plaintiff does not have any open deposit accounts with U.S. Bank).  Article III standing to seek injunctive relief is plainly lacking where a plaintiff no longer has a contractual relationship with the defendant

---

[3] This fact also draws Plaintiff into further tension with Article III standing, which requires plaintiffs to "distinguish themselves from the public at large by demonstrating that the alleged injury 'affect[s them] in a personal and individual way." *Harris v. Bd. of Supervisors, Los Angeles County*, 366 F.3d 754, 761 (9th Cir. 2004) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 n.1 (1992)).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

14

DEFENDANT U.S. BANK'S
MOTION TO COMPEL ARBITRATION

1   and is thus "not personally threatened by [the defendant's] conduct."[4]   *Circle Click*

2   *Media LLC v. Regus Mgmt. Group LLC*, 2015 WL 3879028, at *4 (N.D. Cal. July 18,

3   2016) (quoting *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1022

4   (9th Cir. 2004)).

5         Moreover, Plaintiff does not allege that she seeks to sign up for another U.S.

6   Bank deposit account in the future.   Such an allegation is a necessary (but not

7   sufficient) prerequisite for standing because if Plaintiff does not desire to open

8   another U.S. Bank account, the injunction will not benefit her in any way.   *See*

9   *Davidson*, 889 F.3d at 969-70; *Stover*, 978 F.3d at 1088 (finding plaintiff's

10   allegations inadequate to confer standing because she did not allege a desire to

11   purchase the product again in the future).   Where a plaintiff "neither has an existing

12   business relationship nor any intent to have such a relationship with [the defendant]

13   . . . there is no evidence that [plaintiff] is subject to a real or immediate threat" and

14   therefore no Article III standing.[5]   *Circle Click Media LLC*, 2016 WL 3879028, at *4.

15         Plaintiff has not demonstrated a future threat of cognizable harm sufficient to

16   confer standing to seek an injunction.   Thus, under *Stover*, the *McGill* Rule does not

17   preclude arbitration.   978 F.3d at 1088.

18

19

20

---

21         [4] Plaintiff is also not part of the proposed Class or the Sub-Class as defined in the

22   FAC.   *See* FAC ¶ 60 (defining class members as persons "with a U.S. Bank checking account(s)").

23         [5] Any request for leave to amend to add an allegation that Plaintiff desires to open

24   another U.S. Bank account would be futile.   *See e.g.*, *Colette v. CV Scis., Inc.*, 2020
     WL 2739861, at *3 (C.D. Cal. May 22, 2020) (finding plaintiffs' claim that they

25   desire to purchase defendant's products in the future "unpersuasive" and "strains
     credulity" where plaintiffs would be making such purchase with full knowledge of

26   the defendant's alleged misconduct); *Fernandez v. Atkins Nutritionals, Inc.*, 2018
     WL 280028, at *14-15 (S.D. Cal. Jan. 3, 2018) (finding no standing to seek injunctive

27   relief because the plaintiff had not alleged a desire to purchase the products in the
     future and "now has knowledge that enables her to make an appropriate choice with

28   respect to" the defendant's products).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

15

DEFENDANT U.S. BANK'S
MOTION TO COMPEL ARBITRATION

## V.  THIS ACTION SHOULD BE DISMISSED OR, IN THE ALTERNATIVE, STAYED PENDING COMPLETION OF ARBITRATION

Whether to dismiss or stay an action because of a valid arbitration agreement is within the discretion of the Court. *See 2151 Michelson, L.P. v. Corp. of the Presiding Bishop of the Church of Jesus Christ of Latter-Day Saints*, 754 F. App'x 596, 597 (9th Cir. 2019). Dismissal is appropriate when all claims in the action are subject to arbitration. *Id.* (citing *Sparling v. Hoffman Constr. Co.*, 864 F.2d 635, 638 (9th Cir. 1988)). Here, because all of Plaintiff's claims are subject to the Arbitration Agreement, this action should be dismissed. *See id.* In the alternative, the Court should stay this matter pending completion of arbitration. *See* 9 U.S.C. § 3.

## VI.  CONCLUSION

For the foregoing reasons, U.S. Bank respectfully requests that the Court order Plaintiff to individually arbitrate all of her claims against U.S. Bank and dismiss this action.

Dated: December 21, 2020              MORGAN, LEWIS & BOCKIUS LLP


By  /s/ *Brian M. Jazaeri*
‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
Brian M. Jazaeri
Megan A. Suehiro
Attorneys for Defendant
U.S. BANK NATIONAL ASSOCIATION