UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHAUNA ANDRE., <br><br> Plaintiff, <br> v. <br> U.S. BANK, N.A., <br><br> Defendant. | Case No.:  CV 20-4854-CBM-(PJWx) <br><br> **ORDER RE:  DEFENDANT'S MOTION TO COMPEL ARBITRATION [17][JS-6]** |

The matter before the Court is Defendant U.S. Bank, N.A.'s Motion to Compel Arbitration (the "Motion").  (Dkt. No. 17.)  The matter is fully briefed and the Court held an evidentiary hearing wherein testimony from Plaintiff and two defense witnesses was heard.

## I.  BACKGROUND

This is a putative class action against Defendant U.S. Bank, N.A. ("U.S. Bank" or "Defendant") brought by Plaintiff Shauna Andre arising from overdraft fees charged by U.S. Bank against customers "overdrafting their accounts." (Compl. ¶ 1.)[1]  The Complaint asserts three causes of action:  (1) violation of the

---

[1] Plaintiff seeks to represent a class defined as "[a]ll persons within California with a U.S. Bank checking account(s) who were charged and paid Defendant an overdraft fee(s) at the time his/her checking account showed available funds within the last 4 years from the date of the complaint," and a subclass defined as "[a]ll persons in the State of California with a U.S. Bank checking account(s) who were charged an overdraft fee(s) at the time his/her checking account showed

California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.*; (2) unjust enrichment; and (3) violation of the Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code §§ 1788 *et seq.* Defendant seeks to compel Plaintiff's individual claims to arbitration.

## II.  STATEMENT OF THE LAW

Under the Federal Arbitration Act ("FAA"), a written agreement to arbitrate in a contract involving interstate commerce is "valid, irrevocable and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *See* 9 U.S.C. § 2; *see also Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 111-12 (2001). A party aggrieved by the refusal of another to arbitrate under a written arbitration agreement may petition any United States district court for an order directing that arbitration proceed in the manner provided for in the agreement. 9 U.S.C. § 4; *Volt Info. Servs., Inc. v. Bs. of Ts. of Leland Junior Univ.*, 489 U.S. 468, 474 (1989). The Court's role under the FAA is "limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). If the answers to these questions are yes, then the FAA mandates that district courts *shall* direct the parties to proceed to arbitration on those claims. *Id.* (emphasis in original); *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991). The burden of proof that a claim is exempt from arbitration is on the party contesting the arbitration. *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 227 (1987).

An arbitration agreement may be invalidated only upon grounds that exist in law or equity for the revocation of any contract, such as fraud, duress, and unconscionability. *See* 9 U.S.C. § 2; *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 67-68 (2010). The Court must "interpret the contract by applying general

---

available funds within one year from the date of the complaint." (Compl. ¶ 58.)

state law principles of contract interpretation, while giving due regard to the federal policy in favor of arbitration by resolving ambiguities as to the scope of arbitration in favor of arbitration." *Wagner v. Stratton Oakmont, Inc.*, 83 F.3d 1046, 1049 (9th Cir. 1996); *see also Tompkins v. 23andMe, Inc.*, 840 F.3d 1016, 1022 (9th Cir. 2016).

## III. DISCUSSION

### A. Evidentiary Objections

Plaintiff filed evidentiary objections to the supplemental declaration of Susan Remington (Defendant's Market Operations Leader) filed with Defendant's reply brief on the ground Defendant cannot submit new evidence in connection with its reply brief. (Dkt. No. 25.) Because Remington's supplemental declaration addresses issues raised by Plaintiff in her opposition to the Motion, Plaintiff's objections are **OVERRULED**. *See In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 956 (C.D. Cal. 2015) (declining to strike paragraphs in reply declaration as improper "new" evidence because they were "directly responsive to ConAgra's opposition"), *aff'd sub nom. Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121 (9th Cir. 2017).[2]

### B. Whether the Federal Arbitration Act Applies

The FAA "provide[s] for the enforcement of arbitration agreements within the full reach of the Commerce Clause." *Wulfe v. Valero Ref. Co.-Cal.*, 641 F. App'x 758, 760 (9th Cir. 2016) (quoting *Perry v. Thomas*, 482 U.S. 483, 490 (1987)). The Ninth Circuit has applied the FAA to an arbitration provision in an agreement between a bank and a consumer. *See Kilgore v. KeyBank, Nat'l Ass'n*, 718 F.3d 1052, 1057-58 (9th Cir. 2013). Accordingly, the Court finds the FAA applies here.

---

[2] *Accord United States v. Topkov*, 2015 WL 12683792, at *4 (C.D. Cal. Feb. 5, 2015); *In re Outlaw Lab., LP Litig.*, 2019 WL 3889559, at *5 (S.D. Cal. Aug. 19, 2019); *United States v. Taibi*, 2012 WL 553143, at *4 (S.D. Cal. Feb. 21, 2012).

C. **Agreement to Arbitrate**

"Because arbitration is a contractual matter, a party who has not agreed to arbitrate a controversy cannot be compelled to do so." *Harris v. TAP Worldwide, LLC*, 248 Cal. App. 4th 373, 380 (2016).

Defendant submits evidence demonstrating Plaintiff electronically signed a document titled "Signature Card-Consumer" on May 29, 2018 when she opened her bank account with Defendant. (Remington Decl. ¶ 5, Ex. B.) The signature card signed by Plaintiff provides: "All transactions shall be governed by applicable laws and the bank's terms (copy acknowledged as received herewith)… By signing this signature card, you are also acknowledging your express consent to the terms and conditions in your applicable account agreement." (*Id*. Ex. B.) The Account Agreement, in turn, states: "By providing a written or electronic signature on a signature card or other agreement or contract, opening, or continuing to hold an account with us, you agree to the most recent version of this Agreement, which is available to you at your local U.S. Bank branch, at www.usbank.com, or by calling U.S. Bank 24-Hour Banking at a number listed on the last page of this booklet." (*Id*. Ex. A.) The Account Agreement contains an arbitration provision, which provides: "In the event of a dispute relating to or arising out of your account or this Agreement, you or we may elect to arbitrate the dispute." (*Id*. Ex. A at p.16.)

Plaintiff argues she did not agree to arbitrate her claims because Defendant did not put Plaintiff on notice of the terms of the arbitration provision, and Defendant fails to show that Plaintiff "made an outward manifestation of assert to arbitrate." However, it is undisputed Plaintiff signed the signature card wherein she acknowledged receipt of the bank's terms and agreed to be bound by the terns of the Account Agreement which contained the arbitration provision. *See Johnson v. JP Morgan Chase Bank, N.A.*, 2018 WL 4726042, at *3-*8 (C.D. Cal. Sept. 18, 2018) (finding a valid agreement to arbitrate existed where plaintiffs did not

4

dispute that they signed a signature card when opening their bank account, the signature card stated that by signing the signature card plaintiffs "acknowledge[d] receipt of the Bank's *Account Rules and Regulations* or other applicable account agreement" and "agree[d] to be bound by the terms and conditions contained therein as amended from time to time.," and the Account Rules and Regulations and Deposit Account Agreement amended contained an arbitration provision).[3] Furthermore, because the Account Agreement expressly stated by opening an account with Defendant, Plaintiff "agree[d] to the most recent version of this Agreement," and Plaintiff opened the bank account with Defendant, Plaintiff consented to be bound by the arbitration provision contained in the Account Agreement. *Harris*, 248 Cal. App. 4th at 383.[4]

---

[3] *See also Wayman*, 2015 WL 5772730, at *1 (finding "[a]ll transactions on the [plaintiff's bank] account were . . . subject to applicable laws and the bank's terms, including the deposit agreement" where the plaintiff signed a bank signature card when he opened his account, and the signature card stated "[A]LL TRANSACTIONS SHALL BE GOVERNED BY APPLICABLE LAWS AND THE BANK'S TERMS (COPY ACKNOWLEDGED AS RECEIVED HEREIN) THAT PERTAIN TO THE TYPE OF ACCOUNT AND STYLE OF OWNERSHIP INDICATED ON THIS CARD [SOLE PROPRIETORSHIP]" and the bank's deposit agreement stated "[t]his agreement contains rules that apply to your accounts and your banking relationship with us" and stated "[w]hen you signed your account signature card ... you agreed to follow our rules and regulations, including any changes or additions we may make to them in the future."); *Harris v. TAP Worldwide, LLC*, 248 Cal. App. 4th 373, 383 (Cal. Ct. App. 2016) (holding defendants demonstrated the parties had entered into an arbitration agreement where it was undisputed that the plaintiff had signed an acknowledgment form acknowledging receipt of a separate employee handbook and arbitration agreement, rejecting the plaintiff's contention that there was no assent to be bound by the arbitration agreement because he only acknowledged receipt of the arbitration agreement and never received nor signed the separate arbitration agreement, reasoning "the fact that [the plaintiff] either chose not to read or take the time to understand these provisions is legally irrelevant"); *Reynolds v. NRC Envtl. Servs. Inc.*, 2020 WL 6083112, at *4 (C.D. Cal. Aug. 24, 2020) (finding defendants met their burden of establishing an agreement to arbitrate existed where the plaintiff signed an acknowledgment form agreeing to be bound by the employee handbook which contained the agreement to arbitrate, even though the acknowledgment form did not reference the arbitration agreement) (citing *Harris*, 248 Cal. App. 4th at 383).

[4] *See also U.S. Bank Nat'l Ass'n v. Wayman*, 2015 WL 5772730, at *6 (S.D. Cal. Sept. 30, 2015) ("By signing a signature card, a depositor may agree to be bound by the rules and regulations of the bank."); *Chazen v. Centennial Bank,* 61 Cal. App. 4th 532, 537 (Cal Ct. App. 1998) ("The relationship of bank and depositor is founded on contract, which is ordinarily memorialized by a signature card that the

Plaintiff relies on *Esparza v. Sand & Sea, Inc.*, wherein the California Court of Appeal found there was no agreement to arbitrate based on an employee's acknowledgment of receipt of the employee handbook which contained a section titled "Arbitration Agreement" stating that "[a]s a condition of employment, all employees are required to sign an arbitration agreement," and "[e]mployees will be provided a copy of their signed arbitration agreement." 2 Cal. App. 5th 781, 789 (Cal. Ct. App. 2016). However, in *Esparza*, the California Court of Appeal found there was no legally enforceable obligation to arbitrate based on the employee's acknowledgment form because the welcome letter at the beginning of the employee handbook explicitly stated that "this handbook is not intended to be a contract (express or implied), nor is it intended to otherwise create any legally enforceable obligations on the part of the Company or its employees." The *Esparza* court found the welcome letter language in the handbook demonstrated that the handbook was "not intended to create 'any legally enforceable obligations,' including a legally enforceable obligation to arbitrate." *Id*. at 481. In contrast, here, the Account Agreement containing the arbitration provision expressly states "[t]his is an Agreement" and "[t]his Agreement represents the sole and exclusive agreement between you and us regarding the subject matter described herein and supersedes all previous and contemporaneous oral agreements and understandings." (Remington Decl. Ex. A.) Therefore, *Esparza* is distinguishable from the facts in this case.[5]

---

depositor signs upon opening the account."); *Larrus v. First Nat. Bank of San Mateo Cty.*, 122 Cal. App. 2d 884 (Cal Ct. App. 1954) (depositors who signed signature cards which were required to be signed prior to opening a saving account were bound by the rules of the bank by rules of bank notwithstanding the fact that the depositors were not advised of the contents of the bank's by-laws, rules and regulations, where signature cards provided that by signing the signature card the depositors agreed that funds in account would be governed the bank's by-laws, regulations and rules and practices).

[5] *Card v. Wells Fargo Bank, N.A.*, 2020 WL 1244859, at *6–7 (D. Or. Mar. 16, 2020), also relied on by Plaintiff, is distinguishable. That case involved an online "browsewrap" agreement presented to the plaintiff when he applied online for a credit card with Wells Fargo. The district court in *Card* noted the online

Accordingly, based on the record before the Court, including the testimony given during the evidentiary hearing, the Court finds Plaintiff agreed to the arbitration provision contained in the Account Agreement.

**D.     Whether the Arbitration Provision Is Valid**

Plaintiff contends the arbitration provision is invalid under California law because it is unconscionable. "Under California law, a . . . court may refuse to enforce a provision of a contract if it finds that the provision was 'unconscionable at the time it was made.'" *Tompkins*, 840 F.3d at 1023-24 (citing Cal. Civil Code § 1670.5(a)); *Rent-A-Center, West, Inc.*, 561 U.S. at 67-68 (an agreement to arbitrate may be invalidated only upon grounds that exist in law or equity for the revocation of any contract, such as unconscionability) (citing 9 U.S.C. § 2). Unconscionability has "both a procedural and a substantive element, the former focusing on oppression or surprise due to unequal bargaining power, the latter on overly harsh or one-sided results." *Tompkins*, 840 F.3d at 1023. "Both procedural and substantive unconscionability must be present in order for a clause to be unconscionable, but they need not necessarily be present to the same degree." *Id*. (citing *Armendariz v. Found. Health Psychcare Servs.*, 24 Cal. 4th 83, 114 (Cal. 2000)). "Rather, there is a sliding scale: 'the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa.'" *Poublon v. C.H. Robinson Co*., 846 F.3d 1251, 1260 (9th Cir. 2017) (quoting *Sanchez v. Valencia Holding Co., LLC*, 61 Cal. 4th 899, 910 (Cal. 2015)). Courts may find a contract as a whole "or any clause of the contract" to be unconscionable. *Id.* "The

---

browsewrap agreement "presented [the plaintiff] with a link to the Wells Fargo's Consumer Credit Card Customer Agreement and Disclosure Statement" that contained an arbitration provision but the plaintiff did not have to click the link or indicate that he agreed to the Customer Agreement and therefore there was no agreement to the Consumer Agreement. The district court therefore found on summary judgment that based on "the circumstances of this case," . . . there is a genuine dispute of material fact regarding whether a valid arbitration agreement exists." *Id*. at *7.

party asserting that a contractual provision is unconscionable bears the burden of proof." *Tompkins*, 840 F.3d at 23 (citing *Sanchez*, 61 Cal. 4th at 911).

### 1. Procedural Unconscionability

Plaintiff contends the arbitration provision is procedurally unconscionable because it is a contract of adhesion since it was drafted solely by Defendant, Plaintiff was unable to negotiate the terms of the agreement, Defendant has the unilateral authority to revise the agreement, and Plaintiff was not presented with a copy of the agreement containing the arbitration provision prior to signing her signature card for her bank account with Defendant, the arbitration provision is located on the bottom of page 16 of a 33 page document, and Plaintiff was not reasonable advised of the terms of the arbitration provision. Defendant's witnesses at the evidentiary hearing, however, testified Defendant's employees undergo training regarding disclosures provided to customers when opening accounts including the Account Agreement, employees must certify upon completing the training that they will provide disclosures to customers and the Account Agreement at the beginning of a meeting when opening an account, and it is part of Defendant's policies and procedures to provide the Account Agreement at the beginning of the meeting with a customer opening a new account. Moreover, Plaintiff testified at the evidentiary hearing that she understood there was an agreement between Plaintiff and the bank before she opened her account, and understood if she did not sign the agreement she could not have a bank account with Defendant. Considering the record before the Court, including the testimony given during the evidentiary hearing, the Court thus finds Plaintiff was provided with a copy of the Account Agreement.

"The term [contract of adhesion] signifies a standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it." *Poublon*, 846 F.3d at 1260–61 (quoting *Armendariz*, 24 Cal. 4th at 113). The

California Supreme Court has held the fact that an agreement is a contract of adhesion by itself does not render the agreement unenforceable. *Sanchez*, 61 Cal. 4th at 915 (while "the adhesive nature of the contract is sufficient to establish some degree of procedural unconscionability," "a finding of procedural unconscionability does not mean that a contract will not be enforced, but rather that courts will scrutinize the substantive terms of the contract to ensure they are not manifestly unfair or one-sided") (internal quotations and citations omitted).[6] Moreover, "even when a customer is assured it is not necessary to read a standard form contract with an arbitration clause, it is generally unreasonable, in reliance on such assurances, to neglect to read a written contract before signing it." *Sanchez,* 61 Cal. 4th at 914–15 (internal quotations and citation omitted); *see also id*. at 914 (the defendant "was under no obligation to highlight the arbitration clause of its contract [to the consumer], nor was it required to specifically call that clause to [the consumer's] attention" and that "[a]ny state law imposing such an obligation would be preempted by the FAA.").

Thus, assuming the Account Agreement containing the arbitration provision is a contract of adhesion, there is a low degree of procedural unconscionability. Therefore, Plaintiff must demonstrate a high degree of substantive unconscionability to render the arbitration provision unenforceable. *Poublon*, 846 F.3d at 1263 (finding under California law that "the degree of procedural unconscionability of [such] an adhesion agreement is low, and the agreement will be enforceable unless the degree of substantive unconscionability is high") (citations omitted).[7]

---

[6] *See also Poublon*, 846 F.3d at 1261 ("While California courts have found that 'the adhesive nature of the contract is sufficient to establish some degree of procedural unconscionability' in a range of circumstances, the California Supreme Court has not adopted a rule that an adhesion contract is per se unconscionable.").

[7] *Accord Katz v. BMW of N. Am., LLC*, 2019 WL 4451014, at *4 (N.D. Cal. Sept. 17, 2019); *Baker v. Acad. of Art Univ. Found.*, 2017 WL 4418973, at *4 (N.D. Cal. Oct. 5, 2017).

### 2. Substantive Unconscionability

Here, the arbitration provision provides: "Arbitration can only decide your or our claim, and you may not consolidate or join the claims of other persons who may have similar claims, including without limitation claims for public injunctive or other equitable relief as to our other customers or members of the general public." Plaintiff contends the arbitration provision is substantively unconscionable because it prohibits Plaintiff from seeking public relief in any forum, relying on the California Supreme Court's decision in *McGill v. Citibank, N.A.*, 2 Cal. 5th 945 (Cal. 2017).

In *McGill*, the California Supreme Court held "[a]greements to arbitrate claims for public injunctive relief under the CLRA [California Consumer Legal Remedies Act], the UCL, or the false advertising law are not enforceable in California." 2 Cal. 5th at 956. The California Supreme Court defined public injunctive relief as relief that has "the primary purpose and effect of prohibiting unlawful acts that threaten future injury to the general public," and emphasized that "[r]elief that has the primary purpose or effect of redressing or preventing injury to an individual plaintiff—or to a group of individuals similarly situated to the plaintiff—does not constitute public injunctive relief." *Id.* at 955.

The Complaint does not mention a "public injunction" and no injunctive relief is included in the Complaint's Prayer For Relief. Moreover, the six references to injunctive relief included in the Complaint refer to injunctive relief generally or injunctive relief to address alleged harm to Plaintiff and class members who are or were U.S. Bank customers and were charged overdraft fees,[8]

---

[8] *See* Compl. ¶ 22 ("[Defendant's] conduct caused Plaintiff, and others similarly situated, damages, and requires restitution and injunctive relief to remedy and prevent further harm."); *id.* ¶ 55 ("This action seeks, among other things, equitable and injunctive relief, restitution of all amounts illegally obtained, and disgorgement of any and all ill-gotten gains"); *id.* ¶ 63 (common question includes whether Plaintiff and class members "are entitled to injunctive relief"); *id.* ¶ 67 (referencing "a class-wide injunction"); *id.* ¶ 68 ("injunctive relief is appropriate to the Class as a whole, making class certification appropriate"); *id.* ¶ 97 ("Plaintiff and the Class are entitled to recover damages, and seek injunctive relief

and therefore relief sought in the Complaint is not for "the primary purpose and effect of prohibiting unlawful acts that threaten future injury to the general public" as required to constitute public injunctive relief. *See McGill*, 2 Cal. 5th at 955; *Kramer v. Enter. Holdings, Inc.*, 829 F. App'x 259, 260 (9th Cir. 2020).[9] Accordingly, *McGill* is inapplicable because the Complaint does not seek public injunctive relief under the UCL. *See Bell-Sparrow v. SFG\*Proschoicebeauty*, 2019 WL 1201835, at \*5 (N.D. Cal. Mar. 14, 2019) (holding *McGill* "does not prevent Citibank from requiring plaintiff to arbitrate her claims against it in this case," where the compliant only included "vague and generalized allegations regarding the 'general public,' 'rights of the public,' and the 'public interest' and the "Prayer for Relief" made "no mention of [public injunctive] relief, let alone injunctive relief of any kind," reasoning "[m]erely requesting relief which would generally enjoin a defendant from wrongdoing does not elevate requests for injunctive relief to requests for *public* injunctive relief").[10]

Even if the Complaint could be construed as seeking injunctive relief, the Court finds *McGill* is inapplicable because the primary relief Plaintiff seeks is monetary relief. *See Austin-Smith*, 2019 WL 8754733, at \*5; *Sponheim*, 2019 WL 2498938, at \*5; *Croucier*, 2018 WL 2836889, at \*9.[11] Moreover, *McGill* does not

---

to prevent such conduct in the future.").

[9] *See also Kilgore*, 718 F.3d at 1060-61.

[10] *See also Austin-Smith v. Calatlantic Grp., Inc.*, 2019 WL 8754733, at \*5 (C.D. Cal. Apr. 30, 2019); *Sponheim v. Citibank, N.A.*, 2019 WL 2498938, at \*5 (C.D. Cal. June 10, 2019); *Johnson v. JP Morgan Chase Bank, N.A.*, 2018 WL 4726042, at \*6-\*7 (C.D. Cal. Sept. 18, 2018); *Croucier v. Credit One Bank, N.A.*, 2018 WL 2836889, at \*9 (S.D. Cal. June 11, 2018); *Rappley v. Portfolio Recovery Assocs., LLC*, 2017 WL 3835259, at \*6 (C.D. Cal. Aug. 24, 2017); *Wright v. Sirius XM Radio Inc.*, 2017 WL 4676580, at \*9 (C.D. Cal. June 1, 2017)

[11] *Mejia v. DACM Inc.*, 54 Cal. App. 5th 691 (Cal. Ct. App. 2020) and *Eiess v. USAA Fed. Sav. Bank*, 404 F. Supp. 3d 1240 (N.D. Cal. 2019), relied on by Plaintiff, are distinguishable because here, Plaintiff's prayer for relief in the Complaint does not reference injunctive relief and the vague references to injunctive relief in the body of the Complaint are limited to class members as opposed to the general public. (*See ,e.g.,* Compl. ¶ 67 (referencing "a class-wide injunction"); *id.* ¶ 68 ("injunctive relief is appropriate to the Class").

bar arbitration of Plaintiff's claims because Plaintiff fails to demonstrate she has Article III standing to seek a public injunction because it is undisputed Plaintiff's account with U.S. Bank is closed and she no longer has any open deposit accounts with U.S. Bank.[12] *See Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018) ("actual and imminent" threat of future harm is required for Article III standing, and "conjectural or hypothetical" and "allegations of *possible* future injury are not sufficient" to demonstrate Article III standing); *Stover* 978 F.3d at 1087 (holding "the *McGill* rule does not preclude arbitration of her California UCL claim" because the "complaint does not allege the threat of future harm that *Davidson* held is required for Article III standing in a case seeking public injunctive relief").

Therefore, Plaintiff fails to demonstrate the arbitration provision is substantively unconscionable.

### 3. Poison Pill

The arbitration provision provides: "If any provision of this section is ruled invalid or unenforceable, this section shall be rendered null and void in its entirety." Plaintiff argues the Court cannot compel arbitration because this "poison pill" language makes the entire arbitration provision unenforceable. Plaintiff's argument, however, relies on a finding that the arbitration provision precluding public injunctive relief is invalid under *McGill*.[13] Because the Court finds *McGill* is inapplicable and does not invalidate the arbitration provision, Plaintiff's poison pill argument fails.

\*   \*   \*

---

[12] The evidence before the Court demonstrates Defendant closed Plaintiff's account. (*See* Remington Decl. ¶ 6 (stating that Plaintiff's checking account was charged off and closed in the ordinary course due to the account being overdrawn for approximately two months).

[13] *See, e.g., Mejia*, 54 Cal. App. 5th at 704 (Cal. Ct. App. 2020), *review denied* (Dec. 23, 2020) ("The court could not save the arbitration clause" which was invalid under *McGill* "because of the 'poison pill' contained in the clause "restrict[ing] the right of the Court to sever.").

12

Accordingly, Plaintiff does not meet her burden of showing that the arbitration provision in invalid.

E. **Whether the Arbitration Agreement Covers the Claims Asserted**

Having found the arbitration provision is valid, the Court must examine whether the claims asserted by Plaintiff are covered by the arbitration provision. *Chiron Corp.*, 207 F.3d at 1130. In determining whether a particular dispute falls within the scope of an arbitration agreement, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985).

Plaintiff asserts three causes of action arising from overdraft fees charged in connection with Plaintiff's bank account with Defendant. The arbitration provision provides: "In the event of a dispute relating to or arising out of your account or this Agreement, you or we may elect to arbitrate the dispute." (Remington Decl. Ex. A at p.16.)[14] Therefore, Plaintiff's claims fall within the scope of the claims covered by the arbitration provision. Accordingly, the Court must compel Plaintiff's claims to arbitration. *Chiron Corp.*, 207 F.3d at 1130.

F. **Dismissal of Action**

Defendant requests that the Court dismiss this action upon compelling arbitration of Plaintiff's individual claims.[15] Because Plaintiff's claims are all subject to arbitration, the Court dismisses the action. *See Sparling v. Hoffman Const. Co.*, 864 F.2d 635, 638 (9th Cir. 1988) ("The district court acted within its

---

[14] Plaintiff does not contend her claims do not arise out of her account with Defendant, nor argue her claims are not encompassed within the scope of the arbitration provision.

[15] Section 3 of the FAA provides: "If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall *on application of one of the parties* stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3 (emphasis added). Here, neither party requests a stay of proceedings.

discretion when it dismissed Active's claims" where the arbitration clause required Active to submit all claims to arbitration.).[16]

### IV. CONCLUSION

Accordingly, the Court **GRANTS** Defendant's Motion to Compel Arbitration and dismisses the action.

**IT IS SO ORDERED.**

DATED: May 20, 2021.

CONSUELO B. MARSHALL
UNITED STATES DISTRICT JUDGE

---

[16] *Accord Sunvalley Solar, Inc. v. China Elec. Equip. Grp. Corp.*, 2015 WL 13546433, at *5 (C.D. Cal. Oct. 29, 2015), *aff'd sub nom. Sunvalley Solar, Inc. v. CEEG (Shanghai) Solar Sci. & Tech. Co.*, 690 F. App'x 942 (9th Cir. 2017).